IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Civil Action No. 2:13-cv-1133 |
| v. | : | |
| TWELVE THOUSAND SIX HUNDRED SIXTY-SEVEN AND 00/100 DOLLARS ($12,667.00) IN UNITED STATES CURRENCY, | : | |
| Defendant. | : | |

### VERIFIED COMPLAINT FOR FORFEITURE

Now comes the Plaintiff, United States of America, by and through its undersigned attorney, Michael J. Burns, Assistant United States Attorney, and respectfully states as follows:

1. This is a civil action <u>in rem</u> brought to enforce the provisions of 21 U.S.C. §881(a)(6), which provides for the forfeiture of the above referenced currency to the United States because it was used or intended to be used in exchange for controlled substances, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate the trafficking of a controlled substance, in violation of Subchapter I of Chapter 13 of Title 21 and is therefore forfeitable.

2. The Court has jurisdiction over this matter by virtue of 28 U.S.C. §§1345 and 1355.

3. Venue is proper in this District pursuant to 28 U.S.C. §§1355 and 1395.

4. Defendant is Twelve Thousand Six Hundred Sixty-Seven and 00/100 Dollars ($12,667.00) in United States currency ("Defendant Currency").

5.     The Defendant Currency is located within this District having been deposited into the United States Department of Justice Asset Forfeiture Holding Fund.

6.     The Drug Enforcement Administration ("DEA") received a claim asserting an ownership interest in the Defendant Currency from Enrique Alejandro Davidovich on August 16, 2013.

7.     The Defendant Currency was seized on July 2, 2013, from Enrique Alejandro Davidovich ("Davidovich") at the Port Columbus International Airport by DEA Task Force Officer Wayne McFarland ("TFO McFarland"). On that same date at approximately 6:54 a.m., TFO McFarland was conducting routine surveillance near the entrance and ticketing area of the Port Columbus International Airport when he observed a man, later identified as Davidovich, enter the airport. Davidovich checked in for a flight with U.S. Airways, checked one (1) piece of luggage, and then proceeded toward the "B" security check-point. As Davidovich moved toward the security area, TFO McFarland noticed that he was looking around a lot and appeared to be looking for someone. As TFO McFarland watched, Davidovich arrived at and cleared the security checkpoint. While collecting his belongings after the screening Davidovich placed what appeared to be a bundle of currency in his rear left pocket.

8.     At that time TFO McFarland approached Davidovich from the right so as not to block his egress. Columbus Regional Airport Authority ("CRAA") Police Corporal Dennis Wright ("Corporal Wright") was also in the area but remained out of sight within listening distance. TFO McFarland identified himself by displaying his credentials and advised Davidovich that he was not under arrest or in any trouble and asked if he could speak to him. Davidovich replied "yes" and stopped walking. After being asked, Davidovich provided TFO McFarland with his boarding pass and identification, which he reviewed and returned. TFO

McFarland then asked Davidovich about his travel plans. Davidovich advised he was traveling to Oakland, California, through Phoenix, Arizona, to visit his fiancé's family and some friends. He also advised that his fiancé was not traveling with him or meeting him in Oakland; that he would be staying with friends; that he was also going to California to be a camera man for a video shoot; and, that he would be returning to Columbus after a few days.

9. After confirming his travel plans, TFO McFarland asked Davidovich if he was in possession of any illegal narcotics or large amounts of currency in his luggage or on his person. Davidovich paused and then advised that he had about $8,000.00 on his person and in his carry-on bag. He also confirmed that he had checked a bag and that there was additional currency in that bag as well. He estimated that between his person and his two (2) bags he had a total of $11,000.00. TFO McFarland asked Davidovich why the currency was split up. Davidovich stated that he was scared to travel with all the currency in one place because he feared it would draw attention to him. Based upon Davidovich's responses, TFO McFarland asked if he could search Davidovich's person, carry-on bag, and checked luggage. Davidovich replied "yes" and TFO McFarland searched Davidovich, locating the bundle of currency in his left rear pocket. After completing the search of his person, TFO McFarland searched Davidovich's carry-on bag, a small camera bag, where he discovered two (2) additional bundles of currency in two (2) separate pockets of the bag. Davidovich advised that he was carrying a large amount of currency because he was going to use the money to rent camera equipment for the video. TFO McFarland asked Davidovich if he would accompany him to the DEA office to discuss the currency in his possession. Davidovich agreed, gathered his things, and followed TFO McFarland. TFO McFarland asked Corporal Wright to have Davidovich's checked bag located and brought to the DEA Office and to contact CRAA Police K-9 Officer Dale Beam for narcotic K-9 assistance.

3

On the way to the DEA office, TFO McFarland asked Davidovich if he was employed. He advised that he had been un-employed for approximately six (6) months but that he had previously worked as a surgical assistant at Saint Ann's Hospital.

10. Upon arriving at the DEA office, TFO McFarland asked Davidovich to place everything he had on his person on the chair located to the left of the office entrance door and then asked him to take a seat in the interview room. Corporal Wright arrived at the office with Davidovich's checked bag and TFO McFarland began a search of the checked bag. While searching the checked bag two (2) pairs of shoes, each separated from the rest of the bag by plastic grocery type bags were located. Upon further inspection, TFO McFarland noticed that the insole of all of the shoes appeared to sit higher in the shoe than he was used to. He removed the insole from the shoes and discovered that all four (4) shoes had currency hidden in them. TFO McFarland asked if there was any other currency located in the bags. Davidovich replied that there may be money in a pants pocket in the checked bag and that he couldn't "remember if I packed it in the pockets on this trip." TFO McFarland completed the search of the checked bag and found no other currency or illegal narcotics in the bag.

11. After completing the search of the bags, TFO McFarland asked Davidovich where he lived in the Columbus, Ohio, area. Davidovich gave his address and telephone number and advised that he lived with his fiancé, Crystal Phuthama, and his 10 year old son. He again advised that he was previously employed but was "let go" and had not worked for the past six (6) months but did not respond when TFO McFarland asked why he was "let go." TFO McFarland asked Davidovich if he had his own business as a camera man. He advised he did not, that he was going to work as a camera man for Jamal Edwards, owner of Painted Black Visuals/Films, but was unable to provide contact information for Jamal Edwards.

12. TFO McFarland then again asked Davidovich about the currency found in his possession. Davidovich stated that he had between $11,000.00 and $12,000.00 and that he had gotten $2,000.00 from his fiancé, $2,000.00 from a friend named Glen, $4,000.00 from a friend named Craig Dunbar, and that $7,000.00 to $8,000.00 of the money was his which he had accumulated over, he estimated, six to seven months. TFO McFarland advised Davidovich that those amounts added up to $15,000.00 to $16,000.00, not the $11,000.00 to $12,000.00 he had previously stated was in possession. Davidovich then advised that he was unsure how much money was in his possession or where he had gotten it from and that he had asked a friend about how to transport money who told him it was okay to transport it the way he had concealed it, but could not provide a name, contact information, or a description of the friend who provided this information to him. After being asked, Davidovich also advised that he did not have any receipts for the currency and that he did not trust banks and did not have a bank account[1]. When asked for more information on his friends he claimed had provided him with a portion of the currency in his possession, Glen and Craig Dunbar, Davidovich gave a telephone number for Craig Dunbar[2], advised that he was approximately 27 years of age and lived with his mother, and that Glen was also approximately 27 years of age but could not provide any additional information.

13. As the interview continued, TFO McFarland asked Davidovich if there was any reason that a trained narcotic detection K-9 would alert to the odor of narcotics on the currency. Davidovich advised that the currency was from "all over," that his friends did drugs but he did not, and that the dog should not hit on the currency. TFO McFarland placed the currency in a USPS Flat Rate box and sealed it. In another room within the DEA office, TFO McFarland set

---

[1] Before returning his personal items, TFO McFarland inventoried the contents of Davidovich's wallet and noted that he had a US Bank ReliaCard Visa Debit Card bearing his name.
[2] TFO McFarland attempted but was unable to contact Craig Dunbar using the telephone number given by Davidovich.

5

up ten (10) USPS Flat Rate boxes: five (5) of the boxes were empty and five (5) contained shredded circulated currency. CRAA Police K-9 Officer Dale Beam ("Officer Beam") with narcotics K-9 Zeus conducted a sniff of the ten (10) boxes. K-9 Zeus did not show a change in behavior to any of the ten (10) boxes. Officer Beam and K-9 Zeus then left the area. TFO McFarland replaced one of the boxes with the box that contained the currency from Davidovich's person and bags. Officer Beam with K-9 Zeus returned to the room and conducted a sniff of the boxes. K-9 Zeus showed a positive alert for the odor of narcotics on the box containing the currency by scratching on the box.

14. After the positive alert, TFO McFarland advised Davidovich that due to his inconsistent story, evasive answers, and the positive narcotic K-9 alert the currency was being administratively seized by the DEA. Davidovich confirmed the accuracy of his address and telephone number previously provided in the interview and was given a DEA-12 receipt for an undetermined amount of currency. Davidovich asked TFO McFarland if he was going to seize his "change?" TFO McFarland advised that the DEA only seized dollar bills, not change. Davidovich then asked more specifically about the currency that had been located in his left rear pocket and referred to it as "my money." TFO McFarland advised that all of the currency was being seized and asked if all of the currency was his. Davidovich replied that he was referring to his "quick cash," again making reference to the currency located in his pocket. TFO McFarland explained the administrative seizure process to and noticed that Davidovich became nervous. TFO McFarland asked if he was in danger because of the seizure of the currency. Davidovich responded by repeating the question he had asked him and advising "no, it's not like that." Davidovich then confirmed that that he was still traveling to Oakland and was taken back to the US Airways ticketing counter to re-book his flight.

a. As part of the investigation, TFO McFarland served a subpoena on U.S. Airways for Davidovich's flight history with the airline. The subpoenaed information revealed that on July 1st a round-trip ticket had been purchased for him to fly out of Columbus, Ohio on July 2nd, returning to Columbus, Ohio on July 4th. The information entered by U.S. Airways also showed that after the seizure of the currency, when he arrived in Phoenix, Arizona for his connecting flight, Davidovich advised the airline that he had received a telephone call that there was a family medical emergency and he needed to go back to Columbus, Ohio. He returned to Columbus, Ohio on July 2, 2013.

b. TFO McFarland also served a subpoena on Sprint for the cellular telephone records related to the contact telephone numbers for Davidovich and his fiancé, Crystal Phuthama. TFO McFarland's subsequent investigation of the telephone numbers listed on Davidovich's and Crystal Phuthama's call logs revealed that several of the telephone numbers calling and/or being used by them are linked to multiple past and present narcotics investigations with the DEA.

15. The total amount of United States currency seized from Davidovich was $12,667.00 (Defendant Currency) in the following denominations:

| | | | |
|---|---|---|---|
| $100.00 | x 19 | = | $1,900.00 |
| 50.00 | x 33 | = | 1,650.00 |
| 20.00 | x 432 | = | 8,640.00 |
| 10.00 | x 37 | = | 370.00 |
| 5.00 | x 21 | = | 105.00 |
| 1.00 | x 2 | = | 2.00 |
| | | Total: | $12,667.00 |

16. The United States alleges that the Defendant Currency constitutes money or other things of value furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds of trafficking in a controlled substance, or was used or intended to be used to facilitate one or more violations of 21 U.S.C. §841 et seq., and is therefore forfeitable pursuant to 21 U.S.C. §881(a)(6).

WHEREFORE, Plaintiff, the United States of America, respectfully requests:

(a) That the Court find probable cause to believe that the Defendant Currency is forfeitable to the United States of America under 21 U.S.C. §881(a)(6);

(b) That under 21 U.S.C. §881(b), 18 U.S.C. §981(b), and Supplemental Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Court issue a Warrant of Arrest in Rem for the arrest and seizure of the Defendant Currency based on this verified complaint, to bring the Defendant Currency within the jurisdiction of the Court for purposes of this statutory forfeiture action;

(c) That notice of this action be given to all persons and entities known or thought to have an interest in or right against the Defendant Currency, to appear and show cause why the forfeiture should not be decreed;

(d) That notice of this action be given by advertising in accordance with Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

(e) The Court decree that forfeiture of the Defendant Currency to the United States of America is confirmed, enforced, and ordered;

(f) The Court order the United States Marshals Service to dispose of the Defendant Currency as provided by the law;

(g) That Plaintiff be awarded its costs and disbursements in this action; and such other relief as this Court deems proper and just.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

s/Michael J. Burns
MICHAEL J. BURNS (0023446)
Assistant United States Attorney
Attorney for Plaintiff
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614)469-5715
Fax: (614)469-5240
Michael.Burns@usdoj.gov

## VERIFICATION

I, Wayne A. McFarland, am a Task Force Officer with the Drug Enforcement Administration, and the agent assigned to this case. I have read the contents of the foregoing complaint for forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14 day of November, 2013.

WAYNE A. MCFARLAND
Task Force Officer
Drug Enforcement Administration

9